UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARILYN GINGHAM<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civil Action No.<br>09-cv-2798 (NLH)(KMW)<br><br>**OPINION** |

**APPEARANCES**:

Thomas T. Booth, Jr., Esquire
Law Offices of Thomas T. Booth, Jr., LLC
129 West Evesham Road
Voorhees, NJ 08043
*Attorney for Plaintiff Marilyn Gingham*

Rocco Luisi, Esquire
Fred H. Bicknese, Esquire
Jaffe & Asher LLP
600 Third Avenue
New York, NY 10016
*Attorneys for Defendant Liberty Mutual Fire Insurance Company*

**HILLMAN, District Judge**

　　Plaintiff, Marilyn Gingham, obtained a homeowner's insurance policy from defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), to insure her property in Vineland, New Jersey. However, after a fire damaged plaintiff's insured property in January 2009, Liberty Mutual denied plaintiff's insurance claim and rescinded the policy on the basis of plaintiff's alleged misrepresentation that the insured property

was her primary residence.  Plaintiff filed a complaint against Liberty Mutual, alleging that the insurance company acted in bad faith, in violation of its common law duty and New Jersey statutory law, and that it impermissibly refused to disclose the claim and underwriting files relating to plaintiff and her policy and claim.

Liberty Mutual now moves to dismiss plaintiff's complaint on the grounds that it fails to state a claim upon which relief may be granted.  Along with opposing Liberty Mutual's motion, plaintiff cross-moves for leave to file an amended complaint to add a claim for breach of contract.

For the reasons expressed below, Liberty Mutual's Motion to Dismiss is granted, and plaintiff's Motion for Leave to File an Amended Complaint is granted.

**I.     JURISDICTION**

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between plaintiff and defendant.  Plaintiff, Gingham, is a citizen of the State of New Jersey.  Defendant, Liberty Mutual, is incorporated in the State of Wisconsin with its principal place of business in Boston, Massachusetts.  Plaintiff alleges that the amount in controversy exceeds $75,000.00.

**II.    BACKGROUND**

Plaintiff owned property at 400 North Third Street in

Vineland, New Jersey.[1]  She applied to Liberty Mutual for an insurance policy to cover her property.  Liberty Mutual issued a homeowner's policy of insurance to plaintiff, insuring the property against certain losses.

On or about January 4, 2009, a fire ravaged plaintiff's property, damaging the home and its contents.  As a result, plaintiff submitted a claim to Liberty Mutual pursuant to her homeowner's insurance policy and Liberty Mutual opened a claim file.  Plaintiff cooperated during the investigation, providing a recorded statement to Liberty Mutual representatives.

Upon completion of the investigation of the claim, Liberty Mutual, in a letter dated February 2, 2009, informed plaintiff that it was rescinding the insurance policy and, thus, was denying coverage for her loss.  In particular, Liberty Mutual stated in the letter:

> This action has been taken by [Liberty Mutual] because of what are believed to be material misrepresentations on your application for homeowner insurance.  Specifically, the following information was undisclosed, concealed or otherwise misrepresented:
>
> • You stated that the insured location was your primary residence.  However, you never have lived at the

---

[1] As set forth below, given that the present matter comes before the Court by way of Liberty Mutual's Motion to Dismiss, plaintiff's allegations are accepted as true and viewed in a light most favorable to plaintiff, as is required when reviewing a motion to dismiss.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

>             400 N 3rd Street address in Vineland.
>             Rather, you have rented this
>             property to others.
>
>     Had we known this information, we would not
>     have issued this policy.

On February 12, 2009, plaintiff's counsel wrote a letter to Liberty Mutual requesting the underwriting file relating to plaintiff's policy and the claim file relating to Liberty Mutual's investigation of plaintiff's insurance claim. Liberty Mutual denied plaintiff's counsel's requests, stating that the requested materials constituted confidential "work product."

On or around May 4, 2009, plaintiff filed a complaint in the Superior Court of New Jersey. In the complaint, plaintiff avers that, on account of Liberty Mutual's refusal to furnish the underwriting and claim files, "Plaintiff and her counsel are not able to adequately assess her potential legal options, if any, relative to Liberty's decision to deny the claim." Accordingly, plaintiff allegs two counts against Liberty Mutual. First, plaintiff asserts that Liberty Mutual acted in bad faith, in contravention of its duty of good faith and fair dealing and in violation of the New Jersey Insurance Trade Practices Act ("ITPA"), N.J.S.A. 17:29B-1 et seq., or the New Jersey Unfair Claims Settlement Practices Act ("UCSPA"), "by failing and refusing to provide Plaintiff with the reasons and factual basis for the denial" of insurance coverage. For this claim, plaintiff seeks compensatory and punitive damages, and attorneys' fees and

costs. Second, plaintiff requests a declaratory judgment ordering Liberty Mutual to turn over its claim and underwriting files.

On June 8, 2009, Liberty Mutual removed plaintiff's suit from the Superior Court to this Court. In August 2009, Liberty Mutual disclosed to plaintiff and her counsel non-privileged and non-confidential portions of its claim and underwriting files relating to plaintiff. Soon thereafter, Liberty Mutual filed its Motion to Dismiss plaintiff's complaint. Plaintiff opposes that motion, in part, and has submitted her Cross-motion for Leave to File a First Amended Complaint. In the proposed amended complaint, plaintiff seeks to add a claim for breach of contract on the grounds that Liberty Mutual impermissibly denied her coverage for the loss suffered upon her property.

Presently before the Court is Liberty Mutual's Motion to Dismiss and plaintiff's Cross-motion for Leave to File a First Amended Complaint.

### III. DISCUSSION

#### A. Liberty Mutual's Motion to Dismiss

##### 1. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light

5

most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984) (citation and internal quotation marks omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)).  Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis.  First, a claim's

6

factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id.; see Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

### 2. Declaratory Judgment

In the second count of her initial complaint, plaintiff sought a declaratory judgment against Liberty Mutual requiring

7

the insurance company to divulge to plaintiff its claim and underwriting files relating to plaintiff and her policy and insurance claim.  After plaintiff filed suit, Liberty Mutual released substantial portions of the claim and underwriting files to her, reserving its right to withhold certain privileged and confidential parts of the files.

In its Motion to Dismiss, Liberty Mutual asks this Court to dismiss the second count of plaintiff's complaint, the request for declaratory judgment.  Plaintiff, in her opposition brief, declares that she does not oppose dismissal of the second count.  Therefore, plaintiff's claim for declaratory judgment, ordering Liberty Mutual to turn over its files, is dismissed.

### 3.   **Claim of Bad Faith**

Liberty Mutual challenges the viability of plaintiff's bad faith claim, arguing that it cannot be predicated upon an insurance carrier's failure to produce its claim or underwriting files to an insured.  The claim and underwriting files are the property of Liberty Mutual, it states, and, in large part, are protected from disclosure due to privilege and confidentiality.  According to Liberty Mutual, plaintiff has no proprietary or legal interest in the files simply because they relate to her policy or claim.  Further, Liberty Mutual opines that it satisfied its duty to provide a reasonable explanation for denying coverage when it sent the letter articulating plaintiff's

8

alleged misrepresentation.

Plaintiff counters that by failing to provide her with any documentation to support the denial of her insurance coverage, Liberty Mutual violated the ITPA and the UCSPA and, thus, acted in bad faith and contrary to an insurer's fiduciary duty of good faith and fair dealing.[2]  Only after initiating litigation, says plaintiff, did Liberty Mutual finally disclose basic, unprivileged information that enabled plaintiff to evaluate the validity of her claim's denial.  Plaintiff submits that, through its obfuscation, Liberty Mutual did not set forth a reasonable explanation for the basis of the denial of her claim.

"The duty of good faith and fair dealing pervades insurance contracts."  Sears Mortg. Corp. v. Rose, 634 A.2d 74, 84 (N.J. 1993); see Price v. N.J. Mfrs. Ins. Co., 867 A.2d 1181, 1185 (N.J. 2005) (stating that "every insurance contract contains an implied covenant of good faith and fair dealing").  In the context of first-party insurance claims, the Supreme Court of New Jersey has held that "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying

---

[2] Liberty Mutual also contends that plaintiff cannot assert a private cause of action under the ITPA or the UCSPA because neither statute confers such a right to an insured suing an insurer.  In her opposition brief to the present motion, plaintiff concedes as much, but posits that a violation of either the ITPA or the UCSPA -- while not, in and of itself, giving rise to a private cause of action or bad faith per se  -- may constitute evidence of bad faith, thereby violating the insurer's duty of good faith and fair dealing.

9

benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Pickett v. Lloyd's, 621 A.2d 445, 453 (N.J. 1993) (citation and internal quotation marks omitted); see Ketzner v. John Hancock Mut. Life Ins. Co., 118 Fed. Appx. 594, 599 (3d Cir. 2004) ("Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim."). A plaintiff may also demonstrate an insurer's bad faith when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable.[3]  Pickett, 621 A.2d at 473-74; see Enright v. Farm Family Cas. Ins. Co., 2005 U.S. Dist. LEXIS 37544, at *29

---

[3] Neither negligence nor mistake may constitute bad faith on behalf of an insurer. Rothschild v. Foremost Ins. Co., 653 F. Supp. 2d 526, 536 (D.N.J. 2009). "Rather, it must be demonstrated that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable." Id. In other words, to show that an insurer has acted in bad faith, a plaintiff must demonstrate that no fairly debatable reason exists for denying or delaying the processing of a claim. Pickett, 621 A.2d at 453-54. "Under the 'fairly debatable' standard, a claimant must establish a right to summary judgment on the substantive claim in order to be entitled to assert a claim against the insurer for bad faith refusal to pay [or delay in processing]." McCartney v. Transamerica Ins. & Inv. Group, 2008 U.S. Dist. LEXIS 61204, at *6 (D.N.J. Aug. 4, 2008).

10

(D.N.J. Dec. 29, 2005) ("An insured can also establish bad faith by showing that no valid reasons existed for a delay in processing the claim and that the insurer either knew of, or recklessly disregarded, the fact that no valid reasons supported the delay." (citing Pickett, 621 A.2d at 454)).

By the Court's reading, plaintiff's complaint does not expressly state nor aver specific facts that Liberty Mutual was knowingly or recklessly unreasonable in denying or delaying coverage for plaintiff's loss. Rather, in support of her bad faith claim, plaintiff summarily alleges in her complaint that "Liberty breached its obligations of good faith and fair dealing by failing and refusing to provide Plaintiff with the reasons and factual basis for the denial." Immediately thereafter, plaintiff adds: "No valid and/or debatable reason exists for Liberty's refusal to provide Gingham's counsel with the above information"; and "Liberty's conduct is egregious, intolerable and outrageous." The substance of plaintiff's remaining averments pertains to Liberty Mutual's failure to disclose its claim and underwriting files.

On its face and in light of the letter dated February 2, 2009,[4] however, plaintiff's assertion that Liberty Mutual did not

---

[4] In addressing Liberty Mutual's Motion to Dismiss, the Court may look to the February 2, 2009 letter. In ruling on a motion to dismiss, a court has "discretion to address evidence outside the complaint . . . ." CitiSteel USA, Inc. v. GE, 78 Fed. Appx. 832, 835 (3d Cir. 2003) (citation and internal

provide its reason and factual basis for denying coverage appears patently false, or at least fairly debatable.  Both parties acknowledge that Liberty Mutual sent plaintiff the letter, informing her that Liberty Mutual was denying her insurance claim due to "material misrepresentations on [her] application for homeowner insurance" -- specifically that plaintiff "stated that the insured location was [her] primary residence" even though she purportedly "never . . . lived" there but, instead, "rented this property to others."  Plaintiff fails to intimate any specific facts to illustrate how or why this explanation may be inadequate or otherwise repugnant to the law.

To the extent that plaintiff sought to allege that Liberty Mutual's reason for denying coverage -- i.e., plaintiff's alleged misrepresentation -- itself, or the explanation thereof, constitutes an act of bad faith, plaintiff has failed to set forth facts with sufficient specificity or clarity to satisfy the federal pleading standards.[5]  See Fed. R. Civ. P. 8(a)(2) ("A

---

quotation marks omitted).  Thus, the court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Id. (citation and internal quotation marks omitted).  Here, plaintiff does not dispute the validity or significance of the letter.  In fact, plaintiff refers to it in her opposition brief to the present motion.

[5] Had plaintiff's intent been to allege that Liberty Mutual's reason for denying coverage, or the explanation thereof, was an act of bad faith, the deficiency of plaintiff's complaint is evinced by Liberty Mutual's Motion to Dismiss and plaintiff's own response to that motion.  In its motion, Liberty Mutual

12

pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); see also Iqbal, 129 S. Ct. at 1949 (stating that federal pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that a pleading fails if it "offers labels and conclusions" or "tenders naked assertion[s] devoid of further factual enhancement" (citations and internal quotation marks omitted)); Phillips, 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Aside from general characterizations of Liberty Mutual's actions, plaintiff does not proffer any particularized facts suggesting that Liberty Mutual's reason or explanation for denying coverage was knowingly or recklessly unreasonable.[6]  In lieu of factual support,

---

assumes, in large part, that the bad faith claim is levied against its refusal to turn over the claim and underwriting files, as opposed to its reason or explanation for denying coverage.  In response, plaintiff seems to generally endorse Liberty Mutual's interpretation, challenging primarily Liberty Mutual's decision to withhold the files.

[6] As explained below, plaintiff's complaint, and its opposition brief, is predicated almost entirely upon Liberty Mutual's reluctance to turn over its claim and underwriting files.  In other words, plaintiff couches her purported entitlement to claim and underwriting files in a bad faith claim.  Unless this Court were to find that an insurer is obligated to provide these files to an insured under these circumstances, and that a private cause of action exists to enforce that obligation,

13

plaintiff, at best, sets forth merely "'bald assertions'" and "'legal conclusions,'" which cannot survive a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); see Iqbal, 129 S. Ct. at 1949 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to sustain the alleged claim against a motion to dismiss).

The true import of plaintiff's complaint -- as further evinced by her opposition brief to the present motion -- appears to be her allegations that by not disclosing its claim and underwriting files, Liberty Mutual acted in bad faith. However, given that Liberty Mutual timely provided plaintiff with its reason for denying coverage in the February 2, 2009 letter, it is unclear how and why its reluctance to turn over its own files –- absent any litigation and especially in light of plaintiff's expansive request -- gives rise to a claim for bad faith.[7]

---

there are insufficient facts alleged by plaintiff to otherwise support her bad faith claim.

[7] In her opposition brief to the present motion, plaintiff relies on N.J.S.A. 17:29B-4(9)(n) in support of her bad faith claim. N.J.S.A. 17:29B-4(9)(n) provides that "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim" constitutes an unfair claim settlement practice. First, it is unclear whether this provision provides an insured with, or otherwise reflects, an independent, common law cause of action to challenge an insurer's reason for denying a claim. Further, this statutory provision does not expressly suggest that the non-disclosure of an insurer's claim or underwriting file is tantamount to such an unfair claim

Moreover, Liberty Mutual's hesitation in disclosing its files is arguably reasonable at least insofar as some portions of the files may be deemed confidential or privileged, as Liberty Mutual claims.  See, e.g., Spiniello Co. v. Hartford Fire Ins. Co., 2008 U.S. Dist. LEXIS 53509, at **19-20 (D.N.J. Jul. 14, 2008) (holding that portions of claim file may be protected from disclosure by attorney-client privilege where plaintiff alleged bad faith claim against insurer).

Moreover, as set forth above, courts have clearly delineated two circumstances, pursuant to New Jersey common law, in which an insurer may act in bad faith with regards to an insured's first-party claim: denial of benefits and processing delay.  See Rothschild v. Foremost Ins. Co., 653 F. Supp. 2d 526, 536 (D.N.J. 2009) ("[T]he New Jersey Supreme Court enumerated two situations under which an insurance company can be held to have acted in bad faith in the context of a first party claim: (1) 'denial of benefits' and (2) 'processing delay.'" (citing Pickett, 621 A.2d 445)); Enright, 2005 U.S. Dist. LEXIS 37544, at **25-26 ("Where there is a denial of benefits, bad faith is established by showing (1) that no debatable reason exists for such denial or (2) that there has been unreasonable delay in the payment of benefits under the policy.").  Neither scenario is adequately

---

settlement practice, nor does plaintiff point to any authority that would otherwise support such a construction.

alleged here, nor does either call upon an insurer to disclose its files.

Absent any New Jersey case or statutory law, the Court refrains from finding, as a matter of law, that an insured may enforce the right to obtain an insurer's underwriting or claim file to assess the validity of an insurer's denial of benefits through a bad faith claim. Cf. NN & R, Inc. v. One Beacon Ins. v. Group, 2006 U.S. Dist. LEXIS 43109, at *35 n.21 (D.N.J. Jun. 26, 2009) (dismissing "Plaintiff's bad faith claims as they relate to the sale, issuance, or cancellation of the policy" because "New Jersey courts have not extended the scope of bad faith claims beyond the handling and payment of claims, and Plaintiff has offered no case law or other persuasive authority suggesting otherwise"); Gov't Employees Ins. Co. v. Quine, 2009 U.S. Dist. LEXIS 73010, at *4 (W.D. Okla. Aug. 17, 2009) (finding that an insurer does not have an obligation to turn over its claim file prior to litigation because "the Court's research on the matter has failed to uncover any requirement in Oklahoma law which would mandate prelitigation disclosure of a claims file"). The legal authority presented by the parties and known to this Court do not support a bad faith claim where an insurer has timely provided its reason for denying coverage but merely refused to turn over its claim and underwriting files, in response to a broad request for information, prior to the

commencement of any litigation.[8]  Nor does plaintiff proffer any contractual or policy provisions in support of her claim. Therefore, given that plaintiff's bad faith claim is seemingly predicated upon a hypothesized cause of action to obtain claim and underwriting files in this context, the Court dismisses that claim.

For those reasons, plaintiff's claim alleging bad faith against Liberty Mutual is dismissed.  However, if during litigation plaintiff learns that she has a cognizable claim of bad faith, she may again seek leave to amend her complaint.  See Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc., 2009 U.S. Dist. LEXIS 63216, at *11 (D.N.J. Jul. 22, 2009) ("Plaintiff may move to amend its Complaint at any time during discovery if it discovers facts sufficient to allege bad faith.").

### B. Plaintiff Gingham's Motion for Leave to Amend the Complaint

Plaintiff seeks leave to amend her complaint in order to add

---

[8] Were plaintiff's assertion accepted, in order to avoid a bad faith claim, an insurer would have to divulge its claim and underwriting files whenever it has rejected an insurance claim or sought to rescind an insurance policy, even before litigation has commenced.  If anything, the need for an insurer to disclose its files would reflect upon the insurer's failure to provide an adequate reason and explanation for its denial in the first place or its bad faith denial of benefits.  Here, however, plaintiff has not given any indication as to what may be deficient about Liberty Mutual's denial memorialized in the February 2, 2009 letter -- except that it is not accompanied by the files -- nor has she alleged that Liberty Mutual denied her benefits in bad faith.

a claim for breach of contract. According to plaintiff, Liberty Mutual breached her homeowner's insurance policy when it wrongfully denied her coverage for the loss sustained to her home and rescinded the insurance contract. Although it disagrees with the merit of plaintiff's breach-of-contract claim, Liberty Mutual does not object to the Court granting plaintiff leave to file an amended complaint.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. Here, the Court finds that justice requires that plaintiff have an opportunity to amend her complaint to set forth her claim for breach of contract against Liberty Mutual. Significantly, and as noted above, Liberty Mutual does not oppose plaintiff's request.

Moreover, plaintiff received Liberty Mutual's claim and underwriting files after she had filed her initial complaint. Having reviewed the files, plaintiff now believes Liberty Mutual breached the parties' insurance contract. In particular, plaintiff disputes the proper interpretation of "primary residence" in connection to the parties' agreement. As she told Liberty Mutual in a taped statement given during the investigation of her claim, plaintiff resided at the insured

property intermittently, always maintained a bedroom there, and was renovating it with the intent to live there permanently.  She also furnished the property and paid its utility bills.  Plaintiff states that she did not own any other property.  By plaintiff's assessment, the insured property was her "primary residence" as contemplated by the insurance policy.  Whether or not plaintiff's understanding of the insurance policy is correct, she is entitled to amend her complaint to assert her claim.

For those reasons, plaintiff is granted leave to file her amended complaint.

### IV. CONCLUSION

For the foregoing reasons, Liberty Mutual's Motion to Dismiss is granted.  Further, plaintiff's Cross-motion for Leave to File a First Amended Complaint is granted.  An Order consistent with this Opinion shall be entered.

```
DATED: March 26, 2010              /s/ NOEL L. HILLMAN
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.
```